IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARC ANTHONY ARNOLD,

          Petitioner,

  v.

JOHN E. WETZEL, et al.,

          Respondents.

CIVIL ACTION
NO. 18-91

## OPINION

**Slomsky, J.**                                              **August 6, 2018**

## I.   INTRODUCTION

Before the Court is a pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 of Marc Anthony Arnold ("Petitioner"), a prisoner incarcerated at the State Correctional Institution at Benner Township in Bellefonte, Pennsylvania. (Doc. No. 1.) On May 31, 2018, United States Magistrate Judge Marilyn Heffley issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 18.) Petitioner has filed Objections to the R&R. (Doc. No. 21.) For reasons stated below, the Court will approve and adopt the R&R (Doc. No. 18) and deny the Petition (Doc. No. 1).[1]

## II.   BACKGROUND

On September 18, 2012, Petitioner pled guilty to one count of general criminal homicide in the Court of Common Pleas of Lehigh County, Pennsylvania. (Doc. No. 18 at 1.) The trial

---

[1]   For the purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. No. 1), the Response to the Petition for Writ of Habeas Corpus (Doc. No. 14), the Report and Recommendation (Doc. No. 18), the Objections to the Report and Recommendation (Doc. No. 21), and the relevant state court record.

court held a four-day hearing to determine Petitioner's degree of guilt. Id. The court found Petitioner guilty of third-degree murder and sentenced him to a term of 20 to 40 years' imprisonment. Id. The Pennsylvania Superior Court summarized the facts of Petitioner's case as follows:

> [Petitioner] was charged with criminal homicide stemming from the shooting of Kevin Cobbs, Jr. at Philly's Sports Bar on April 7, 2010. The events leading up to the shooting, as well as the fatal shooting, were depicted on videotape. [Petitioner] arrived at the bar with three other men at approximately 12:34 a.m. They entered through the rear door. [Petitioner] stopped and spoke to Kevin Cobbs, Jr., the victim, who was his superior in the Bloods street gang. The two men soon exited the bar with another man identified as Dwight Boase. [Petitioner] and Cobbs began arguing in the parking lot, and shortly thereafter, one of the men who had accompanied [Petitioner] approached them. Cobbs reached for his waistband, and [Petitioner] and his cohort grabbed Cobbs and wrestled with him. The physical struggle ended shortly after Boase pulled a handgun from his waist.

> [Petitioner] and Cobbs continued to argue, and the two other men who had accompanied [Petitioner] joined the verbal altercation outside. The video showed Cobbs and the others disengaging from the altercation, walking toward the entrance of the bar, and entering. In the meantime, [Petitioner] went to the car, retrieved a handgun, held it behind his back, and ran towards the bar entrance. [Petitioner] reached into the entryway of the bar and started shooting in Cobbs' direction. After he emptied his weapon, [Petitioner] returned to the vehicle, entered the front passenger seat, and departed. After Cobbs collapsed in the bar from a gunshot wound, his cousin removed a loaded .22 caliber weapon from him and discarded it in a trash can. Cobbs died due to the gunshot.

Commonwealth v. Arnold, No. 1884 EDA 2016, 2017 WL 2791132, at *1 (Pa. Super. Ct. June 27, 2017).

Petitioner confessed to committing the killing and told the police that he had shot the victim because, when he told the victim that he wanted to quit the street gang, the victim threatened him and his mother and displayed a weapon. (Doc. No. 18 at 2.) Before trial, the Commonwealth filed a notice of its intention to seek the death penalty, and Petitioner's counsel filed a notice of an insanity defense. (Id.) Petitioner's initial counsel had obtained an expert report from a forensic psychiatrist, Dr. Susan E. Rushing, M.D., J.D., stating that Petitioner was

legally insane as he shot the victim.  (Id.)  The Commonwealth retained two expert witnesses, which included Dr. Frank M. Dattilio, Ph.D., a clinical and forensic psychologist, who both concluded that Petitioner had not been legally insane during that time.  (Id. at 3-4.)

Thereafter, Petitioner's counsel withdrew from the case, and the court appointed attorney Christopher Shipman, Esquire, to represent Petitioner.  (Id. at 2.)  Relying on advice from his counsel, Petitioner agreed to plead guilty to a charge of general criminal homicide and to allow the court to determine his degree of guilt.  (Id.)  In return, the Commonwealth agreed to not seek the death penalty.  (Id.)  The trial court informed Petitioner that he could be found guilty of first-degree murder, second-degree murder, third-degree murder, voluntary manslaughter, or involuntary manslaughter and discussed the potential penalties for each offense.  (Id. at 2-3.)  It also explained to him the meaning of "malice" and "heat of passion" for purposes of determining the degree of a homicide.  (Id. at 3.)

At the hearing to determine Petitioner's degree of guilt, Petitioner's counsel pursued defenses of heat of passion and imperfect self-defense.  (Id.)  The Pennsylvania Superior Court summarized Petitioner's hearing testimony as follows:

> At the time of the shooting, [Petitioner] had not seen Cobbs for approximately one month.  [Petitioner] narrated the following version of the events depicted on the videotape.  Upon seeing Cobbs in the bar, [Petitioner] gave him the Blood[s] handshake, explained why he had not been involved in the gang, and why he no longer wanted to be in the gang.  The victim led him outside to the middle of the parking lot and told him that he was not leaving the gang.  Cobbs allegedly told [Petitioner] that, "the only way you leave is in a body bag."  The victim threatened to kill [Petitioner] and his mother, issuing the veiled threat that he knew where [Petitioner]'s mother lived.  Cobbs put his hand to his waist as if he had a gun.  Others joined the altercation and guns were drawn.  [Petitioner] and his victim struggled over the victim's gun and, [Petitioner] testified that the victim held a gun to his head.  The situation de-escalated when the parties realized that there was a camera capturing the scene.
>
> [Petitioner] testified that he walked to the car, angry and fearful that the victim was going to kill him and his family.  The video depicted [Petitioner] yelling and waving his arms at the victim.  He entered the car, retrieved a gun,

and returned running and shooting. He emptied all six bullets from his weapon into the bar after the victim and the others had returned to that establishment. He contended that he shot Cobbs in the heat of passion due to his paranoia and psychosis and in response to Cobbs' threats. He testified that he was hearing voices and that he was lost at the time.

Arnold, 2017 WL 2791132, at *2 (citations omitted).

Petitioner's counsel presented the testimony of Dr. Dattilio at the degree of guilt hearing. (Doc. No. 18 at 3.) Dr. Dattilio said that Petitioner had a long history of mental illness. (Id.) He "opined at the degree of guilt hearing, consistent with his report that, due to 'his psychotic illness and paranoia, . . . the entire situation was magnified, . . . he clearly believed that he was going to die and his family was going to die . . . [i]t was self-defense for him." (Id. at 3-4 (quoting Arnold, 2017 WL 2791132, at *4 n.4).) He further testified that he believed Petitioner's "intention was to scare and not to kill." (Id. at 4 (quoting Arnold, 2017 WL 2791132, at *4 n.4).)

The Commonwealth presented the testimony of an opposing expert witness who testified that Petitioner's actions were the result of his argument with the victim and not the result of his mental illness. (Id.) The court rejected both the prosecution's arguments seeking a conviction of first-degree murder and Petitioner's argument that he should be found guilty only of manslaughter. (Id.) The court found that because Petitioner had acted with malice, but without the specific intent to kill, he was guilty of third-degree murder. (Id.)

In the R&R, the United States Magistrate Judge summarized the procedural history of the case after the verdict as follows:

[Petitioner] filed a direct appeal, which the Pennsylvania Superior Court denied on March 7, 2014. Opinion, Commonwealth v. Arnold, No. 299 EDA 2013 (Pa. Super. Ct. Mar. 7, 2014). He then sought leave to appeal to the Pennsylvania Supreme Court, which was denied on August 25, 2014. Commonwealth v. Arnold, 100 A.2d 298 (Pa. 2014).
[Petitioner] filed a pro se petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546, on July 10, 2015. Arnold, 2017 WL 2791132, at *3. The court appointed counsel, who filed an amended PCRA petition on [Petitioner's] behalf. Id. In

that amended petition, [Petitioner] claimed that his trial counsel had rendered ineffective assistance by failing to pursue an insanity defense. Opinion at 2, Commonwealth v. Arnold, No. CP-39-CR-0003221-2010 (Pa. Ct. Com. Pl. Lehigh Cnty. May 27, 2016) [hereinafter "PCRA Op."]. The PCRA court held a hearing on Arnold's petition on December 22, 2015, at which [Petitioner] testified that his trial counsel, Shipman, had told him that he could not proceed with an insanity defense at trial, but that the insanity defense would be asserted after he pled guilty. Arnold, 2017 WL 2791132, at *3. He claimed that he only entered the guilty plea because of Shipman's representations and that if he had known that insanity was a complete defense that should be raised at trial, he would have gone to trial rather than entered a plea. Id. He also claimed to have relied on Shipman having told him that insanity and self-defense "were one and the same." Id. In addition, [Petitioner] contended that he had told the court multiple times during the degree of guilt hearing that he wanted to pursue an insanity defense; however the transcript of that hearing shows otherwise. Id. at *6 n.6.

Shipman also testified at the hearing. Id. at *3-4. He stated that he had handled more than 100 criminal cases, two or three of which involved the insanity defense, and that he was death-penalty certified. Id. at *3. He contradicted [Petitioner]'s assertions, testifying that he had reviewed all the expert reports with [Petitioner] multiple times and had informed him that he did not believe an insanity defense was viable. Id. at *4. Shipman testified that he had explained the potential defenses of imperfect self-defense and insanity to [Petitioner]. Id. He had also explained to [Petitioner] that, if he were found not guilty by reason of insanity, he could still be civilly committed indefinitely. Id. Shipman stated that he had informed [Petitioner] that, if he agreed to plead guilty to general criminal homicide, he could not assert an insanity defense but that the Commonwealth had agreed not to seek the death penalty. Id. He further stated that [Petitioner] had agreed with him that, in light of the evidence, pleading guilty and seeking a manslaughter conviction based on imperfect self-defense offered the best chance of success. Id. The PCRA court found Shipman's testimony to be credible. PCRA Op. at 3 n.1.

The PCRA court denied [Petitioner]'s petition. Id. at 4. It held that in light of the Commonwealth's experts' reports, it was a reasonable and informed strategic decision by Shipman to pursue a manslaughter conviction under a theory of imperfect self-defense rather than an insanity defense. Id. The court pointed out that, by doing so, Shipman was successful in negating [Petitioner]'s intent to kill, resulting in a third-degree murder conviction rather than the first-degree murder conviction that the Commonwealth had sought. Id.

On appeal of the denial of [Petitioner]'s PCRA petition, the Pennsylvania Superior Court also rejected [Petitioner]'s arguments. Arnold, 2017 WL 2791132, at *5-6. It concluded that Shipman's strategy had been reasonable in light of the "minimal likelihood of success" on an insanity defense based on the expert witnesses' reports. Id. at *6. It pointed out that to pursue an insanity defense, [Petitioner] would have had to risk the death penalty or commitment to a

mental health facility.  Id.  The court reasoned that, by pleading guilty, [Petitioner] was able to rely on Dr. Datillio's testimony that supported his own testimony that he believed he was acting in self-defense.  Id.  The Superior Court also rejected [Petitioner]'s argument that his plea was not knowing, intelligent or voluntary, because he made it in reliance on what he asserted were Shipman's misrepresentations.  Id. at *5.  The court noted that Shipman had testified that he had accurately represented the circumstances and the legal consequences of the plea to [Petitioner] and that [Petitioner] had agreed that making it and proceeding to a degree of guilt hearing was the better choice.  Id.  It held that the trial court's finding that Shipman's testimony was credible was amply supported by the record.  Id. at *6.  It also indicated that the trial court had explained to [Petitioner] the various degrees of criminal homicide, that [Petitioner] could be found guilty of any one of them, the potential sentences and the meaning of "heat of passion" and "malice" in the context of criminal homicide.  Id.  At the beginning of each day of the hearing, the court asked [Petitioner] whether he had any questions, whether he understood what was occurring in the proceeding and whether he still wished to maintain his plea, with the understanding that the court would determine his degree of guilt.  Id.  Based on that evidence, the Superior Court held that the PCRA court's finding the [Petitioner] made his guilty plea knowingly and voluntarily was supported by the record.  Id.

On January 3, 2018, Petitioner filed the instant pro se Petition for Writ of Habeas Corpus.[2]  (Doc. No. 1.)  In the Petition, Petitioner raised the following arguments as summarized by the Magistrate Judge:

> (1) that the evidence was insufficient to establish the malice required to support a conviction of third-degree murder; (2) that his sentence was excessive because he asserts that the sentencing court failed to consider mitigating factors in violation of state statute; and (3) that his counsel was ineffective in not pursuing an insanity defense.

(Doc. No. 18 at 7.)  In her R&R, the Magistrate Judge recommended the Petition be denied.  (Id.)

Petitioner filed Objections to the R&R.  (Doc. No. 21.)  For reasons discussed below, the Court will approve and adopt the R&R (Doc. No. 18) and will deny the Petition (Doc. No. 1).

---

[2]  Petitioner's Petition was received by the Clerk of this Court on January 8, 2018.  (Doc. No. 1.)  It was filed, however, according to the date on the document, January 3, 2018, in accordance with the prison mailbox rule.  Houston v. Lack, 487 U.S. 266, 275-76 (1988); Burns v. Morton, 134 F.3d 109, 113 (1998).

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1.  Any party may file objections in response to the magistrate judge's report and recommendation.  § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  E.D. Pa. Civ. R. 72.1.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina Coll. v. Russell, 499 U.S. 255, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.    ANALYSIS

Petitioner makes three Objections to the R&R.  (Doc. No. 21.)  First, Petitioner argues that the evidence was insufficient to support the sentencing court's finding that he acted with malice.  (Id. at 5.)  Second, he claims that the sentencing court failed to consider mitigating factors during his sentencing. (Id. at 8.) Third, Petitioner asserts that his counsel was ineffective in advising him to plead guilty.  (Id. at 9.)  The Court will discuss each Objection in turn.

### A.    Petitioner's Objection that the Evidence Was Insufficient to Support the Sentencing Court's Finding that He Acted with Malice Is Meritless

Petitioner asserts that the evidence was insufficient to support a finding that he acted with malice because he contends that the cooling time element of malice is negated when the evidence of his mental illness is reviewed in its totality.  (Doc. No. 21 at 7.)  He argues that the courts failed to acknowledge evidence of his mental illness, which he contends negated malice, and failed to review the full description of his diagnosis of manic depressive psychosis and schizoaffective disorder.  (Id.)  He claims that with those disorders, he could not have acted with malice.  (Id.)

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court clarified the standard of review for challenges to the sufficiency of evidence on habeas review.  It explained that "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original) (citation omitted).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  A sentencing court, as a trier of fact, is not required to believe a Petitioner's evidence over the Commonwealth's expert witness testimony.  See Sporish v. Harlow, No. CV 12-4142,

2015 WL 10939692, at *18 (E.D. Pa. May 7, 2015) (explaining that "[t]he weight of the evidence is a matter exclusively for the fact-finder who is free to believe all, part, or none of the evidence heard at trial and to determine the credibility of the witnesses"), report and recommendation adopted, No. 2:12-CV-4142, 2016 WL 5390541 (E.D. Pa. Sept. 26, 2016).

The Magistrate Judge properly explained that the habeas statute "gives federal habeas courts no license to redetermine the credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  (Doc. No. 18 at 10 (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).)  The sentencing court did not credit Petitioner's evidence enough to find that the Commonwealth's evidence did not establish malice.  (Id.)  Instead, it relied on evidence that the initial confrontation between Petitioner and the victim had ended and the victim reentered the bar, while Petitioner went to his car to show that there had been a cooling off time.  (Id. at 10-11.)  Petitioner then chased the victim with a gun after the initial confrontation had ended and also shot wildly into a room containing other people, demonstrating a sufficient level of recklessness to establish malice.  (Id. at 11.).  Therefore, there was sufficient evidence to establish that Petitioner acted with malice.

There is no evidence, however, that the trial court did not consider Petitioner's evidence of mental illness.  Rather, the transcript of the hearing demonstrates that evidence of Petitioner's mental illness was in fact admitted into evidence.  At the hearing, the court said: "Those exhibits are admitted into evidence. I will review them in advance of the expert's testimony."  Tr. of Degree of Guilt Hr'g at 97: 8-10, Commonwealth v. Arnold, No 3221/2010 (Lehigh Cty., Pa. Ct. Com. Pl. Sept. 25, 2012).  As the Magistrate Judge correctly noted, the court is not required to believe Petitioner's evidence over the Commonwealth's evidence.  (Doc. No. 18 at 10.) Accordingly, Petitioner's first Objection is without merit.

### B. Petitioner's Objection that the Sentencing Court Failed to Consider Mitigating Factors Is Not Cognizable on Habeas Review

In his second Objection, Petitioner appears to argue that the sentencing court failed to address his mental illness as a mitigating sentencing factor and that if it had, the result would have been different. (Doc. No. 21 at 8.) But Petitioner does not cite any authority to support his contention that the sentencing courts' failure to do so warrants habeas review. He simply states that "facts show that prison is not the best or beneficial environment for an inmate or person suffering with mental disease." Id.

Petitioner's sentence of 20 to 40 years did not exceed the statutory limits for third-degree murder. See 18 Pa. Cons. Stat. § 1102(d) (providing that "a person who has been convicted of murder of the third degree or of third degree murder of an unborn child shall be sentenced to a term which shall be fixed by the court at not more than 40 years"). "[H]abeas challenges to a state court's sentencing discretion are unreviewable by a federal court provided that the sentence lies within the statutory guidelines, is not based on arbitrary considerations, and the defendant's constitutional rights were not violated." Smith v. Cameron, No. 1:15-CV-1546, 2017 WL 2118282, at *15 (M.D. Pa. May 16, 2017) (citations omitted); see also Stewart v. Kelchner, No. 07-1796, 2007 WL 2823660, at *2 (E.D. Pa. Sept. 25, 2007). Thus, the Magistrate Judge properly concluded that since Petitioner's sentence was within the statutory limits for his conviction of third-degree murder and because he has not claimed that the sentencing court violated his constitutional rights, Petitioner cannot obtain habeas relief on this basis. (Doc. No. 18 at 12.)

### C. Petitioner's Claim that His Counsel Was Ineffective in Advising Him to Plead Guilty Is Meritless

Petitioner argues that his counsel was ineffective in advising him to plead guilty because he believes other defenses were available to him if he had proceeded to trial. (Doc. No. 21 at

11.)  He also states that his attorney believed the plea was the best step to eliminate the possibility of the death penalty but asserts that it is a violation of the Eighth Amendment for a mentally ill person to receive the death penalty.  (Id. at 9-10.)  As a result, he claims that he could not receive the death penalty due to his mental illness and that his counsel, therefore, was ineffective.  (Id. at 10.)  In addition, Petitioner argues that "if [he] would not have been forced in this unconstitutional Plea, [he] would have been afforded to more defenses."  (Id. at 11.)  Petitioner argues that if Dr. Susan Rushing's evidence were allowed then he would have been able to argue other degrees of homicide and could have been convicted of manslaughter and civil commitment.  (Id. at 9.)  He then argues that "due to trial counsel actions, [he] was wrongfully denied an affirmative defense with a jury trial." (Id.)

To establish an ineffective assistance of counsel, a Petitioner must satisfy a two-prong test as set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under this test, Petitioner's counsel is presumed to have acted effectively unless Petitioner can show that: (1) counsel's "representation fell below an objective standard of reasonableness"; and (2) counsel's deficient performance prejudiced the petitioner.  Id. at 687-96.  Both prongs must be met in order to prevail on an ineffective assistance of counsel claim.  Id.  To establish prejudice, Petitioner must show a "reasonable probability that, but for [his counsel's] unprofessional errors, the result of the proceeding would have been different."  Id. at 687-88, 694.  "Judicial scrutiny of counsel's performance must be highly deferential . . . [and a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Here, Petitioner contends that his counsel was ineffective in advising him to plead guilty to general criminal homicide.  (Doc. No. 21 at 9.)  Under the first prong of Strickland, Petitioner's claim fails because counsel's representation was reasonable and therefore did not fall

"below an objective standard of reasonableness." 466 U.S. at 669. Petitioner's counsel reasonably believed the self-defense defense was more likely to succeed than the insanity defense, and counsel testified that Petitioner agreed with this advice. Commonwealth v. Arnold, No. 1884 EDA 2016, 2017 WL 2791132, at *4 (Pa. Super. Ct. June 27, 2017.) As the Superior Court stated, Petitioner agreed to the plea and was not forced, as he claims. Id. at *6. The Magistrate Judge explained that:

> At the beginning of each day of the hearing, the court asked [Petitioner] whether he had any questions, whether he understood what was occurring in the proceeding and whether he still wished to maintain his plea, with the understanding that the court would determine his degree of guilt.

(Doc. No. 18 at 6 (citing Arnold, 2017 WL 2791132 at *6).)

Additionally, Petitioner was not wrongfully denied an affirmative defense, as he contends. He did raise the affirmative defense of imperfect self-defense, which was unsuccessful. Arnold, 2017 WL 2791132 at *2. Petitioner also argues that if Dr. Rushing's evidence were allowed, he would have been able to argue other degrees of homicide. (Doc. No. 21 at 9.) But regardless of whether Dr. Rushing's report was admitted, Petitioner was still open to being charged with manslaughter. Arnold, 2017 WL 2791132 at *5. Thus, counsel's representation in advising Petitioner to plead guilty was objectively reasonable because Petitioner freely agreed to the plea, and he was still able to raise an affirmative defense that could have supported a lesser homicide charge.

Next, Petitioner relies on Atkins v. Virginia, 536 U.S. 304 (2002), in arguing that it is a violation of the Eight Amendment's ban on cruel and unusual punishment for the mentally ill to receive the death penalty and therefore he could not have received the death penalty as a mentally ill person. (Doc. No. 21 at 9.) Atkins, however, involves the mentally retarded, not the mentally ill. 536 U.S. at 304. There is no record evidence to establish that Petitioner is mentally

retarded. In fact, his IQ as established by Dr. Rushing is 84.[3] (Doc. No. 1-3 at 4.) Since Petitioner's IQ is not low enough to suggest mental retardation and since he has not even argued that he is mentally retarded, Petitioner's reliance on Atkins is inapposite.

The PCRA court and the Superior Court both concluded that "it was a reasonable strategic choice for [Petitioner's counsel] to pursue an imperfect self-defense theory based on [Petitioner's] testimony regarding the victim's threats and the experts' opinions that, although not legally insane, [Petitioner] suffered from serious mental illness." (Doc. No. 18 at 13.) It was therefore objectively reasonable for counsel to advise Petitioner to plead guilty. Thus, Petitioner fails the first prong of the Strickland test.

Since Petitioner has failed to satisfy the first Strickland prong, his claim of ineffective assistance of counsel fails. 466 U.S. at 687-96. His claim of ineffective assistance of counsel also fails, however, because he cannot satisfy the second prong, which requires proving that counsel's deficient performance prejudiced Petitioner. Id. To establish prejudice, Petitioner must show a "reasonable probability that, but for [his counsel's] unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694. Petitioner has not offered enough evidence to establish that but for his counsel advising him to take the plea, he would not have been charged with third degree murder. In fact, had he not taken the plea, he faced the possibility of the death penalty. Arnold, 2017 WL 2791132 at *1. Because Petitioner cannot prove that he was prejudiced by his counsel's performance, he cannot satisfy the second prong of the Strickland test. Since Petitioner cannot satisfy both prongs of the Strickland test, Petitioner's Objection to the R&R that his counsel was ineffective is without merit.

---

[3] An estimated 1 to 3 percent of the population has an IQ between 70 and 75 or lower, "which is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition." Atkins, 536 U.S. at 309 n.5. (citing 2 Kaplan & Sadock's Comprehensive Textbook of Psychiatry 2952 (B. Sadock & V. Sadock eds. 7th ed. 2000)).

## V.     CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Heffley's Report and Recommendation (Doc. No. 18) and will deny the Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  An appropriate order follows.